FILED
CLERK, U.S. DISTRICT COURT
9/15/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: VV DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2026 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LAKIYA MALONE,<br>Defendant. | CR 2:26-cr-00595-SPG<br>I N D I C T M E N T<br>[18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 666(a)(1)(B): Bribery Concerning Programs Receiving Federal Funds; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A. INTRODUCTORY ALLEGATIONS

1. At times relevant to this Indictment:

a. Defendant LAKIYA MALONE was a resident of Los Angeles, California.

b. Defendant MALONE worked at a non-profit organization called Special Service for Groups Inc. ("SSG") in a division called Homeless Outreach Program Integrated Care System ("SSG/HOPICS").

c. During her tenure with SSG/HOPICS, defendant MALONE worked as a Senior Manager for Family Interim Housing, a Family Crisis Housing Program Manager, a Family Crisis Housing Supervisor, and a Lead Placement Coordinator for Family Crisis Housing.

d. Among other job duties and responsibilities, defendant MALONE was responsible for referring people experiencing homelessness or at risk of experiencing homelessness (the "participants") to homeless housing sites that SSG/HOPICS operated either directly or indirectly through subcontractors.

e. SSG/HOPICS received millions of dollars each year from the United States Department of Housing and Urban Development ("HUD") for homeless housing programs, such that SSG/HOPICS was an agency that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance in each of the calendar years 2020, 2021, 2022, 2023, 2024, and 2025.

f. At least a substantial portion of the funding SSG/HOPICS received to operate homeless housing sites was from taxpayer-funded homeless housing programs, including programs funded by the City of Los Angeles (the "City"), Los Angeles County (the "County"), and HUD, which themselves included taxpayer-funded programs administered by the Los Angeles Homeless Services Authority ("LAHSA").

g. LAHSA was a joint powers authority of the City and County of Los Angeles, created in 1993 to address the problem of homelessness in Los Angeles County, and LAHSA obtained its funding from a variety of sources including the City, County, and HUD.

h. Co-conspirator Alexander Soofer ran a homeless housing organization called Abundant Blessings From Above, Inc. ("Abundant Blessings") that, among other things, purported to provide services to participants of homeless housing programs at SSG/HOPICS sites, through contracts that Soofer entered into with SSG/HOPICS, on behalf of Abundant Blessings.

i. Co-conspirator ("CC-3") and co-conspirator 4 ("CC-4") worked for co-conspirator Soofer at Abundant Blessings.

j. SSG/HOPICS paid Abundant Blessings a flat rate for each participant or family of participants Abundant Blessings housed, based on the number of participants or families housed at each site on each day. SSG/HOPICS then billed LAHSA for reimbursement for these payments pursuant to agreements SSG/HOPICS entered into with LAHSA.

k. To be entitled to payment, SSG/HOPICS required Abundant Blessings to submit monthly invoices detailing the names of each participant or family of participants (referenced through the family's head of household) housed during the month and the number of days each participant or family stayed at each site, calculating the total amount owed to Abundant Blessings based on the number of participants or family of participants housed each day at each site.

l. As part of the monthly invoicing process, SSG/HOPICS also required Abundant Blessings to submit daily sign-in sheets from all participants or families of participants (with heads of household signing on behalf of families) to confirm the dates the participants or families stayed at Abundant Blessings sites.

m. SSG/HOPICS required all invoiced participants to be eligible for the services they received (that is, they were required

to be homeless or at risk of experiencing homelessness) and to be enrolled in the Homeless Management Information System ("HMIS"), which is a database maintained for homeless housing providers and administrators of grant funding. One way for a participant to become enrolled in HMIS and entitled to services was for a homeless housing provider to prepare a form called an "OBSERVATION OF HOMELESS STATUS FORM" ("Homeless Observation forms") with the provider certifying that the provider observed the participant residing in a place not meant for human habitation such as a street, car, park, abandoned building, bus station, airport, or campground.

n. SSG/HOPICS required subcontractors such as Abundant Blessings to maintain files for all participants and to make those files available for inspection upon request in part to ensure all invoiced participants were entitled to the services being billed.

B. <u>OBJECTS OF THE CONSPIRACY</u>

2. Beginning no later than in or around May 2020, and continuing through at least in or around January 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant MALONE knowingly conspired with co-conspirators Soofer, CC-3, CC-4, and others known and unknown to the Grand Jury, to commit wire fraud, in violation of Title 18, United States Code, Section 1343 and bribery concerning federally funded programs in violation of Title 18, United States Code, Section 666.

C. <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

3. The objects of the conspiracy were to be carried out, and were carried out, in substance, as follows:

a. Co-conspirator Soofer would give, offer to give, and agree to give bribes and kickback payments to defendant MALONE,

intending to influence and reward defendant MALONE in the performance of defendant MALONE's official duties.

b. In exchange for accepting those bribes and kickback payments from co-conspirator Soofer, defendant MALONE would agree to perform official acts, including, among others, making priority referrals of participants to homeless housing sites co-conspirator Soofer was operating to maximize the amount he was billing and receiving under his contracts with SSG/HOPICS.

c. Co-conspirator Soofer would pay the bribes and kickback payments to defendant MALONE through checks payable to defendant MALONE and to an organization she controlled called Grateful Hearts Realty & Consulting ("Grateful Hearts").

d. Defendant MALONE and co-conspirator Soofer would disguise these payments to make it appear they were for consulting work (including through notations in memos on checks referencing "consulting"), but in reality, the payments were for priority referral of participants, and the payments would be calculated based on the number of referrals defendant MALONE made to co-conspirator Soofer each month.

e. Defendant MALONE would also refer so-called "ghost" participants to co-conspirator Soofer for co-conspirator Soofer to bill SSG/HOPICS for these ghost participants, falsely claiming the ghost participants were staying and receiving services at Abundant Blessings sites and seeking payment for these purported services when the ghost participants never stayed or received services at these sites.

f. Defendant MALONE would know at least some of the individuals whose identities were used as ghost participants, and she

directed at least one of these individuals (including through a text message sent to the individual) to lie to anyone asking where the individual was living, such as anyone from SSG/HOPICS or LAHSA, and to falsely state that the individual was living at an Abundant Blessings site if anyone asked.

g. Defendant MALONE would also direct co-conspirator Soofer, including in text messages sent to co-conspirator Soofer, to lie and to have others, including CC-3 and CC-4, lie to anyone asking whether the ghost participants were staying at Abundant Blessings sites and falsely claim the ghost participants were staying at these sites when they were not, and co-conspirator Soofer and his staff at times would lie and falsely claim the ghost participants were staying at the sites.

h. Defendant MALONE would create false and misleading "Welcome Letters" supposedly provided to the ghost participants, and defendant MALONE would provide these letters to co-conspirator Soofer for inclusion in files co-conspirator Soofer maintained for the ghost participants to mislead anyone who audited or inspected those files.

i. Defendant MALONE would direct co-conspirator Soofer to fabricate, and co-conspirator Soofer would fabricate and would direct others to fabricate, false and misleading Homeless Observation forms, falsely claiming co-conspirator Soofer or one of his staff had observed the ghost participants residing in a place not meant for human habitation and thereby falsely certifying that the ghost participants were eligible for homeless housing services.

j. With defendant MALONE's knowledge and approval, co-conspirator Soofer would include the fake Homeless Observation forms

in files maintained for ghost participants to mislead anyone who audited or inspected the files.

k. Defendant MALONE would at times provide co-conspirator Soofer with fabricated sign-in sheets for the ghost participants to make it falsely appear that the ghost participants had stayed at Abundant Blessings sites and signed sign-in sheets while staying at the sites.

l. At other times, with defendant MALONE's knowledge and approval, co-conspirator Soofer would forge or direct others including CC-3 and CC-4 to forge ghost participants' signatures on sign-in sheets.

m. With defendant MALONE's further knowledge and approval, co-conspirator Soofer would submit the fabricated sign-in sheets to SSG/HOPICS in connection with the monthly invoicing process.

n. Also with defendant MALONE's knowledge and approval, co-conspirator Soofer would submit false and misleading invoices to SSG/HOPICS falsely claiming the ghost participants had stayed at Abundant Blessings sites, seeking payments for ghost participants based on the flat daily rate SSG/HOPICS paid for each participant or family of participants.

o. In furtherance of the scheme and to accomplish an essential part of it, defendant MALONE would send emails to co-conspirator Soofer with logs or schedules of participants, including ghost participants, supposedly staying at Abundant Blessings sites, and co-conspirator Soofer would send emails or direct emails to be sent to defendant MALONE and others at SSG/HOPICS regarding monthly invoices and billing for participants, including ghost participants,

and sign in sheets for participants, including ghost participants, and as was reasonably foreseeable to defendant MALONE, these emails traveled in interstate commerce.

p. Defendant MALONE and co-conspirator Soofer would split the proceeds of the false and misleading billing in the names of the ghost participants, with co-conspirator Soofer adding these proceeds to the checks he made out to MALONE and Grateful Hearts and delivered to MALONE in person at pre-arranged meeting spots outside of offices maintained by Abundant Blessings and SSG/HOPICS.

4. In total, between approximately May 2020 and January 2025, co-conspirator Soofer paid defendant MALONE approximately $180,000 through the bribery and kickback conspiracy described above. Between 2019 and 2025, co-conspirator Soofer billed SSG/HOPICS for more than $17 million for participants he supposedly housed at Abundant Blessings sites, including ghost participants, and received more than $17 million from SSG/HOPICS as a result of such billings, in substantial part as a result of the bribery and kickback scheme.

D. OVERT ACTS

5. On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendant MALONE, co-conspirator Soofer, CC-3, CC-4 and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California, and elsewhere:

Overt Act No. 1: On May 29, 2020, defendant MALONE deposited and caused the deposit of a check from co-conspirator Soofer in the approximate amount of $1,500.

Overt Act No. 2: On December 1, 2021, co-conspirator Soofer sent an email to defendant MALONE attaching a Homeless Observation form for ghost participant Q.B.

Overt Act No. 3: On January 10, 2022, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for December 2021, which included billing for ghost participant Q.B.

Overt Act No. 4: On March 2, 2022, defendant MALONE sent an email to co-conspirator Soofer attaching a list of participants supposedly staying at Abundant Blessings sites, including ghost participant Q.B.

Overt Act No. 5: On April 8, 2022, co-conspirator Soofer sent an email to defendant MALONE concerning billing for March 2022, including billing for ghost participant Q.B.

Overt Act No. 6: On June 7, 2022, defendant MALONE sent an email to co-conspirator Soofer attaching a Welcome Letter for ghost participant T.H.

Overt Act No. 7: On July 6, 2022, co-conspirator Soofer sent an email to defendant MALONE including a link to sign-in sheets for a site at 2412 W. 48th Street, which included sign-in sheets for ghost participants Q.B. and T.H.

Overt Act No. 8: On August 5, 2022, co-conspirator Soofer sent an email to defendant MALONE including a link to sign-in sheets for a site at 2412 W. 48th Street, which included sign-in sheets for ghost participants Q.B. and T.H.

Overt Act No. 9: On October 7, 2022, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning

billing for September 2022, which included billing for ghost participant T.H.

Overt Act No. 10: On November 4, 2022, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for October 2022, which included billing for ghost participant T.H.

Overt Act No. 11: On December 8, 2022, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for November 2022, which included billing for ghost participant T.H.

Overt Act No. 12: On January 9, 2023, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for December 2022, which included billing for ghost participant T.H.

Overt Act No. 13: On February 13, 2023, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for January 2023, which included billing for ghost participant T.H.

Overt Act No. 14: On March 7, 2023, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for February 2023, which included billing for ghost participant T.H.

Overt Act No. 15: On April 6, 2023, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for March 2023, which included billing for ghost participant T.H.

Overt Act No. 16: On May 5, 2023, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for April 2023, which included billing for ghost participant T.H.

Overt Act No. 17: On June 7, 2023, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for May 2023, which included billing for ghost participant T.H.

Overt Act No. 18: On July 6, 2023, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for June 2023, which included billing for ghost participant T.H.

Overt Act No. 19: On August 2, 2023, defendant MALONE texted co-conspirator Soofer the following: "Hi Alex I'm emailing you the homeless verification for the new ghost client I need you to fill it out and get it back to me as soon as possible . / Here's her info [] Mom w/ 2 kids [] [J.C.] [] You can put sleeping in her car somewhere near one of your shelters. / Her start date is gonna be July 3rd 2023 I'm gonna bring you the sign in sheets sometime this week."

Overt Act No. 20: On August 2, 2023, co-conspirator Soofer responded to defendant MALONE regarding the text message described in Overt Act No. 19 and the Homeless Observation form for ghost participant J.C.: "Good morning Lakiya. I hope you are well. Where should we state we observed her? / What date should I put on the homeless verification of Dat[e] observed? / Nevermind. I just saw your texts above."

Overt Act No. 21: On August 2, 2023, co-conspirator Soofer sent an email to defendant MALONE attaching a Homeless Observation form for ghost participant J.C.

Overt Act No. 22: On August 8, 2023, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for July 2023, which included billing for ghost participant T.H.

Overt Act No. 23: On September 14, 2023, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for August 2023, which included billing for ghost participants T.H. and J.C.

Overt Act No. 24: On October 9, 2023, co-conspirator Soofer sent an email to defendant MALONE and others at SSG/HOPICS concerning billing for September 2023, which included billing for ghost participants T.H. and J.C.

Overt Act No. 25: On December 26, 2023, defendant MALONE sent a text message to co-conspirator Soofer stating: "Good Morning Alex I hope you had a relaxing weekend[.] We have an issue with one of Our Ghosts [J.C.]. [CC-4] is reporting that she is not there to [an SSG/HOPICS representative]." Co-conspirator Soofer responded: "Good morning. / Let me speak with [CC-4]."

Overt Act No. 26: On January 15, 2024, defendant MALONE sent co-conspirator Soofer text messages stating: "I'm not alone. / Hey Alex I couldn't really talk I have company. Since we're going to 1 even in February can we split the ghost? Half and half? That's gonna a [sic] be a significant change for me. IF we can split the ghost that would help. / 3 ghost x 30 days=$6930 / 3 ghosts x 31 days=$7161 / Lets [sic] do $3000 Flat / For the 3 ghost. Think [emoji] about it let me know."

Overt Act No. 27: On January 19, 2024, co-conspirator Soofer directed an email to be sent to defendant MALONE and others at

SSG/HOPICS concerning billing for December 2023, which included billing for ghost participants T.H., T.M., and J.C.

Overt Act No. 28: On April 8, 2024, co-conspirator Soofer directed an email to be sent to defendant MALONE and others at SSG/HOPICS concerning billing for March 2024, which included billing for ghost participants T.H., T.M., and J.C.

Overt Act No. 29: On May 15, 2024, co-conspirator Soofer directed an email to be sent to defendant MALONE and others at SSG/HOPICS concerning billing for April 2024, which included billing for ghost participants T.H., T.M., and J.C.

Overt Act No. 30: On June 6, 2024, co-conspirator Soofer directed an email to be sent to defendant MALONE and others at SSG/HOPICS concerning billing for May 2024, which included billing for ghost participants T.H., T.M., and J.C.

Overt Act No. 31: On July 9, 2024, co-conspirator Soofer directed an email to be sent to defendant MALONE and others at SSG/HOPICS concerning billing for June 2024, which included billing for ghost participants T.H., T.M., and J.C.

Overt Act No. 32: On August 23, 2024, co-conspirator Soofer directed an email to be sent to defendant MALONE and others at SSG/HOPICS concerning billing for July 2024, which included billing for ghost participants T.H., T.M., and J.C.

Overt Act No. 33: On September 11, 2024, co-conspirator Soofer directed an email to be sent to defendant MALONE and others at SSG/HOPICS concerning billing for August 2024, which included billing for ghost participants T.H., T.M., and J.C.

Overt Act No. 34: On November 14, 2024, co-conspirator Soofer directed an email to be sent to defendant MALONE and others at

SSG/HOPICS concerning billing for August 2024, which included billing for ghost participants T.H., T.M., and J.C.

Overt Act No. 35: On January 14, 2025, defendant MALONE deposited a check from co-conspirator Soofer, made payable to Grateful Hearts.

COUNTS TWO THROUGH TEN

[18 U.S.C. §§ 1343, 2(a)]

6. The Grand Jury realleges paragraphs 1 and 3 through 5 of this Indictment here.

A. SCHEME TO DEFRAUD

7. Beginning no later than in or around December 2021, and continuing until at least in or about November 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant MALONE, together with co-schemer Soofer, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud SSG/HOPICS and LAHSA, as to material matters, and to obtain money and property from SSG/HOPICS and LAHSA by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

8. The scheme to defraud operated, in substance, as described in paragraphs 3 through 5 of this Indictment.

B. USE OF WIRES

9. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant MALONE, together with co-schemer Soofer, and others known and unknown to the Grand Jury, each aiding and abetting the other, for the purpose of executing the scheme to defraud described above, transmitted and caused the transmission of the following items by means of wire communications in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE |
|---|---|---|
| TWO | 12/01/2021 | Email from co-conspirator Soofer to defendant MALONE attaching a Homeless Observation form for ghost participant Q.B. |
| THREE | 03/02/2022 | Email from defendant MALONE to co-conspirator Soofer attaching a list of participants supposedly staying at Abundant Blessings sites, including ghost participant Q.B. |
| FOUR | 06/07/2022 | Email from defendant MALONE to co-conspirator Soofer attaching Welcome Letter for ghost participant T.H. |
| FIVE | 08/05/2022 | Email from co-conspirator Soofer to defendant MALONE including link to sign-in sheets for a site at 2412 W. 48th Street, which included sign-in sheets for ghost participants Q.B. and T.H. |
| SIX | 12/08/2022 | Email from co-conspirator Soofer to defendant MALONE and others at SSG/HOPICS concerning billing for November 2022, which included billing for ghost participant T.H. |
| SEVEN | 03/07/2023 | Email from co-conspirator Soofer to defendant MALONE and others at SSG/HOPICS concerning billing for February 2023, which included billing for ghost participant T.H. |
| EIGHT | 08/02/2023 | Email from co-conspirator Soofer to defendant MALONE attaching Homeless Observation form for ghost participant J.C. |
| NINE | 09/14/2023 | Email from co-conspirator Soofer to defendant MALONE and others at SSG/HOPICS concerning billing for August 2023, which included billing for ghost participants T.H. and J.C. |
| TEN | 11/14/2024 | Email from co-conspirator Soofer to defendant MALONE and others at SSG/HOPICS concerning billing for September 2024, which included billing for ghost participants T.H., T.M., and J.C. |

COUNTS ELEVEN THROUGH TWENTY-ONE

[18 U.S.C. § 666(a)(1)(B), 2(a)]

10. The Grand Jury realleges paragraphs 1 and 3 through 5 of this Indictment here.

11. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant MALONE, an agent of SSG/HOPICS, together with Soofer and others known and unknown to the Grand Jury, each aiding and abetting the other, corruptly solicited, demanded, accepted, and agreed to accept something of value from Soofer, namely checks in the approximate amounts detailed below, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of SSG/HOPICS having a value of $5,000 or more, specifically the payment of public funds for housing participants at homeless housing sites.

| **COUNT** | **DATE** | **AMOUNT** | **CHECK NO.** |
|---|---|---|---|
| ELEVEN | 01/19/2024 | $5,550.00 | 2506 |
| TWELVE | 03/01/2024 | $6,900.00 | 2656 |
| THIRTEEN | 04/09/2024 | $3,300.00 | 2668 |
| FOURTEEN | 04/09/2024 | $2,400.00 | 2669 |
| FIFTEEN | 05/24/2024 | $2,700.00 | 2696 |
| SIXTEEN | 06/18/2024 | $2,200.00 | 2698 |
| SEVENTEEN | 09/17/2024 | $2,900.00 | 2740 |
| EIGHTEEN | 09/17/2024 | $2,600.00 | 2741 |
| NINETEEN | 09/17/2024 | $2,900.00 | 2743 |
| TWENTY | 11/01/2024 | $1,800.00 | 2767 |
| TWENTY-ONE | 01/17/2025 | $2,310.00 | 2783 |

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of defendant LAKIYA MALONE's conviction of the offenses set forth in any of Counts One through Twenty-One of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

a. All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense.

b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has

//

been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

Jennifer Waier

JENNIFER L. WAIER
Chief Assistant United States Attorney & Chief, Criminal Division

ROGER A. HSIEH
Assistant United States Attorney
Chief, Major Frauds Section

ANDREW ROACH
Assistant United States Attorney
Acting Deputy Chief, Major Frauds Section

KERRY L. QUINN
Assistant United States Attorney
Major Frauds Section

JUAN M. RODRIGUEZ
Assistant United States Attorney
Acting Chief, Public Corruption & Civil Rights Section